628 A.2d 1151

COMMONWEALTH of Pennsylvania

v.

Michael P. MEEHAN, Appellant.

Superior Court of Pennsylvania.

Submitted May 24, 1993.

Filed July 15, 1993.

Rowley, President Judge, concurred in result.

264

Dominic Centrella, Norristown, for appellant.

Mary M. Killinger, Executive Asst. Dist. Atty., Norristown, for Com., appellee.

Before ROWLEY, President Judge, and CIRILLO and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from the order of the lower court denying appellant's request for collateral relief under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546.[1] The sole issue presented for review is whether appellant validly waived his constitutionally guaranteed right to be represented by counsel at the PCRA hearing. In addition to the issue raised in his brief, appellant has filed a *pro se* application for relief in which he requests the appointment of new counsel. For the reasons set forth below, we affirm the order of the PCRA court and deny appellant's *pro se* application for relief.

Since appellant's *pro se* filings have created undue complexity and confusion in this case, we will recount the relevant facts and procedural history because an understanding of these matters is crucial to our disposition of this appeal. Appellant, Michael Meehan, was employed as a manager at Snuffy's Tavern located in Pottstown, Pennsylvania. On the morning of May 11, 1987, James Sheehan, the owner of Snuffy's Tavern, confronted appellant regarding a shortage in the bar's weekend receipts. Appellant quit his job and departed from the bar. Appellant later returned to the bar armed with a gun. Although Mr. Sheehan asked appellant to leave the bar, appellant refused and a physical altercation ensued in which appellant repeatedly struck and kicked Mr. Sheehan in his

1. The PCRA modified in part, repealed in part and renamed the former Post Conviction Hearing Act (PCHA), 42 Pa.C.S.A. §§ 9541–9551. Because appellant's petition was filed after the effective date of the amendments to the PCHA, his petition will be evaluated under the PCRA rather than the PCHA. *See* Act of April 13, 1988, P.L. 336, No. 47, § 6 (providing that all petitions for post-conviction collateral relief filed after the effective date of the act must be evaluated under the PCRA).

head and upper torso. As a result of the beating inflicted by appellant, Mr. Sheehan sustained a broken nose as well as bruises and cuts which required thirty-three sutures to close. Appellant also suffered bruises, swollen lips and blackened eyes in the fight. Appellant was thereafter arrested and charged with various offenses arising out of this incident.

Although appellant was scheduled for arraignment on these charges, he failed to appear and a bench warrant was issued for his arrest. Due to appellant's absence, the Commonwealth requested and was granted an extension of time in which to bring appellant to trial.

In December 1987, the Montgomery County authorities learned that appellant was incarcerated in Morris County, New Jersey. Upon discovering appellant's location, a detainer was filed with the New Jersey authorities. New Jersey retained control over appellant until he was paroled; appellant was then returned to Pennsylvania pursuant to the detainer. At a hearing conducted in May 1988, the trial court revoked the bench warrant because appellant's failure to appear was apparently due to his incarceration. A public defender, Fiorindo Vagnozzi, Esq. was appointed to represent appellant. Mr. Vagnozzi was later permitted to withdraw his representation.

Appellant failed to appear at the next scheduled proceeding and a bench warrant was again issued for his arrest. Appellant was subsequently located in the Lycoming County Prison where he was incarcerated on unrelated charges. At a hearing held in January 1989, the bench warrant was revoked because the Commonwealth had failed to send notice of the proceeding to appellant's correct address. Bench warrants were again issued in February and July of 1989, but were later revoked by the trial court.

Appellant was finally brought before the court on the instant matter in August 1989 at which time a public defender, Joseph Hylan, Esq., entered his appearance on appellant's behalf. Although Mr. Hylan was the designated attorney of record, appellant contacted Mr. Vagnozzi by letter and in-

structed him to file a Rule 1100 petition to dismiss the charges. Mr. Vagnozzi was further requested to advise appellant of any plea offers by the Commonwealth. Mr. Vagnozzi filed a Rule 1100 petition in which he asked that appellant be released on nominal bail. Mr. Vagnozzi also met with appellant and the district attorney and successfully negotiated a plea bargain pursuant to which appellant would plead guilty to one count of simple assault in exchange for the prosecutor's agreement to *nol pros* the remaining charges. The prosecutor also agreed, due to appellant's insistence, that appellant would be given a sentence of two years' probation. Appellant entered his plea on August 29, 1989 and the plea bargain was accepted by the court. Appellant was immediately sentenced to probation in accordance with his agreement. Appellant neither sought to withdraw his plea nor filed a direct appeal.

When appellant later discovered that his guilty plea had collateral consequences with respect to other unrelated charges, appellant filed two *pro se* PCRA petitions on March 29, 1990 and April 23, 1990 alleging that his guilty plea was unlawfully induced by trial counsel and that trial counsel was ineffective in failing to apprise appellant of his right of appeal and in neglecting to file a motion to dismiss the charges under Rule 1100, the Interstate Agreement on Detainers Act and the Uniform Criminal Extradition Act. Appellant's petitions further contained boilerplate allegations that his constitutional and due process rights had been violated and that trial counsel had failed to protect appellant's rights in accordance with the ABA standards of defense. The trial court summarily dismissed both petitions without appointing counsel. Appellant thereafter initiated a timely *pro se* appeal to this court. In its opinion, the trial court acknowledged its error in dismissing appellant's petitions without appointing counsel and suggested that the case be remanded so that counsel could be appointed.

Appellant withdrew his appeal in response to the trial court's opinion. David Huganir, Esq. was thereafter appointed to represent appellant. However, appellant was dissatis-

fied with Mr. Huganir because he previously had been a member of the public defender's office. Appellant consequently filed a *pro se* motion for the appointment of new counsel. The lower court denied this request and appellant timely filed a *pro se* appeal therefrom. Appellant also filed a *pro se* motion for recusal with the lower court. In response, the trial court entered an order explaining that the appeal deprived the court of jurisdiction to act upon the recusal motion. Appellant subsequently withdrew his appeal after he received assurances that no conflict of interest actually existed between Mr. Huganir and the public defender's office.

A supplemental PCRA petition was filed on appellant's behalf on July 12, 1990.[2] The supplemental petition essentially repeated all of the grounds for PCRA relief set forth in 42 Pa.C.S.A. § 9543. However, the petition contained more specific allegations that all prior counsel[3] who represented appellant were ineffective: (1) in failing to investigate and prepare an adequate defense to the charges; (2) in failing to follow appellant's instructions; (3) in failing to ensure that appellant received the benefit of his plea agreement;[4] (4) in failing to file a motion to withdraw the plea after discovering that the agreement had been breached; and (5) in failing to file a timely appeal. Appellant also alleged that he was entitled to

2. Although the supplemental petition was signed by counsel, Mr. Huganir indicated that the petition was drafted by appellant and that it was signed at appellant's direction. Post Conviction Hearing Transcript (P.C.H.T.) 9/30/91 at 5.

3. Appellant had been represented by various public defenders at the bench warrant/bail revocation hearings. None of these counsel entered an appearance on appellant's behalf and they never represented appellant with respect to the underlying charges.

4. According to appellant, the plea agreement required the district attorney to send a letter to Mrs. LuAnn Yohn, the prison release officer of Lycoming County. The letter was to inform Mrs. Yohn that the bench warrant issued for appellant's arrest in February, 1989 had been erroneously lodged and that it was subsequently revoked by the Montgomery County Court. In addition, appellant was to be given a copy of the letter at the time his plea was entered. Although the letter was written, it was not sent until December 6, 1989. Appellant believes the plea agreement was breached because the letter was not sent at the time his plea was entered.

relief because Mr. Vagnozzi was unauthorized to act on appellant's behalf.[5]

A hearing on the above petitions was held on September 30, 1991. At the hearing, appellant agreed to withdraw his motion for recusal of the trial judge. Post Conviction Hearing Transcript (P.C.H.T.) 9/30/91 at 39–40. Post-conviction counsel, the district attorney, appellant and the trial judge additionally reviewed the scope of the hearing and appellant's continued representation by Mr. Huganir. During this discussion, appellant agreed that the hearing should primarily focus on Mr. Vagnozzi's alleged ineffectiveness in failing to file a Rule 1100 motion to dismiss the charges and the fact that counsel improperly induced appellant's guilty plea. Although appellant initially agreed to proceed with counsel, he subsequently interrupted Mr. Huganir's examination of Mr. Vagnozzi and informed the court that he wanted to represent himself. The court gave appellant the option of proceeding *pro se* or continuing with Mr. Huganir as his counsel. Appellant chose to proceed *pro se.*

At the conclusion of the hearing, the lower court indicated that the case would be taken under advisement. Appellant's petition was denied by order entered on October 2, 1991. However, the PCRA court never advised appellant of his appellate rights by certified mail as mandated by Pa.R.Crim. P., Rule 1508(e), 42 Pa.C.S.A. Appellant filed this untimely *pro se* appeal on November 6, 1991.

Since lodging his appeal, appellant has inundated this court with myriad *pro se* filings. Appellant first filed an application for remand on February 11, 1992.[6] The petition was denied

---

5. This argument is directed at the fact that Mr. Vagnozzi had formally withdrawn his appearance and a subsequent appearance was entered by Mr. Hylan. Appellant thus argues that Mr. Vagnozzi was unauthorized to represent appellant because Mr. Hylan was the designated attorney of record.

6. In this document, appellant requested this court to remand the case for the appointment of counsel and/or a re-hearing as to the claims raised in his supplemental PCRA petition.

by order entered on May 29, 1992.[7] Appellant next filed an application for relief in August, 1992 followed by a request for the appointment of appellate counsel which was filed in September, 1992. Appellant also filed a motion for stay of proceedings in November, 1992.[8] By order entered on December 18 1992, this court denied appellant's motion for stay but granted his request for appellate counsel. Dominic Centrella, Esq., who currently represents appellant, was thereafter appointed. Appellant continued his *pro se* filings despite the fact that Mr. Centrella had entered his appearance. In January, 1993 appellant filed another application for relief which was denied by order entered on May 3, 1993. Appellant's most recent filing is the application for relief which is currently before us for disposition.

We must first ascertain whether we have jurisdiction to entertain the appeal. *See Commonwealth v. Doleno,* 406 Pa.Super. 286, 288, 594 A.2d 341, 342 (1991). As indicated above, appellant has appealed from the order denying his petition for post-conviction relief. An order of this type is final for purposes of appeal. *See* Pa.R.Crim.P., Rule 1509, 42 Pa.C.S.A. The appellate procedural rules further provide that an appeal must be filed within thirty (30) days after the entry of the order from which the appeal is taken. Pa.R.A.P., Rule 903(a), 42 Pa.C.S.A.

The record reveals that the order denying appellant's PCRA petitions was entered on October 2, 1991. Appellant thus had thirty days from this date, or until November 1, 1991 in which to initiate his appeal. Unfortunately, appellant's notice of appeal was not filed until November 6, 1991. The appeal is untimely and therefore should be quashed. *See Commonwealth v. Doleno,* 406 Pa.Super. at 288, 594 A.2d at 342. However, in his correspondence with this court, appellant

7. In denying the application, this court specifically indicated that relief would not be granted because appellant had decided to proceed *pro se* during the PCRA hearing.

8. Appellant additionally filed a motion for appointment of counsel with the trial court. The trial court entered an order denying appellant's motion on November 17, 1992.

argues that this untimeliness should be excused due to the PCRA court's failure to comply with Rule 1508(e) of the Pennsylvania Rules of Criminal Procedure which provides, in relevant part, that "[i]f the case is taken under advisement the judge shall advise the defendant of the right to appeal by certified mail, return receipt requested." Pa.R.Crim.P., Rule 1508(e), 42 Pa.C.S.A.

It does not appear from our review of the certified record that the PCRA court complied with this rule. It is evident from appellant's prior *pro se* appeals that he is well aware of his appellate rights and of the correct mode for perfecting a timely appeal. However, we cannot say with certainty that the PCRA court's failure to follow the directives of Rule 1508 had no effect on appellant's ability to perfect his appeal since he was incarcerated in a distant county. Under these circumstances, we will proceed to consider the merits of this appeal. *See* Note, Pa.R.A.P., Rule 105, 42 Pa.C.S.A. (Rule 105(b), which prohibits the courts from enlarging the time period for filing a notice of appeal, is not intended to affect the power of a court to grant relief in the case of fraud or breakdown in the processes of a court) and *Commonwealth v. Doleno*, 406 Pa.Super. at 289, 594 A.2d at 342 (Superior Court declined to quash an untimely appeal where the trial court did not follow the correct post-trial procedure).

We must next consider appellant's application for relief. *See Commonwealth v. Blystone*, 421 Pa.Super. 167, 176, 617 A.2d 778, 783 (1992) (evaluating the merits of a *pro se* appellate filing, despite the defendant's representation by counsel, where the defendant raised allegations regarding counsel's ineffectiveness which were not discussed by counsel). Appellant asserts in his application that counsel has misinterpreted the focus of this appeal and that the brief filed by counsel is defective. For these reasons, appellant requests us to direct the trial court to appoint new counsel. With regard to a request for the appointment of new counsel, it has been generally recognized that:

an indigent defendant has an absolute right to free counsel. However, he is not entitled to free counsel of his choice.

The right to counsel does not give a defendant the right to delay the [proceedings] indefinitely because he is dissatisfied with competent counsel appointed by the court, [who is] ready and willing to represent him.

*Commonwealth v. Neal,* 387 Pa.Super. 165, 174–175, 563 A.2d 1236, 1241 (1989), *allocatur denied,* 525 Pa. 597, 575 A.2d 564 (1990) (citations and quotation marks omitted). "As a general rule, however, a defendant must show irreconcilable differences between himself and his court-appointed counsel before a ... court will be reversed for ... refusing to appoint new counsel." *Commonwealth v. Ingram,* 404 Pa.Super. 560, 569, 591 A.2d 734, 738 (1991), *allocatur denied,* 530 Pa. 631, 606 A.2d 901 (1992). In addition, "[t]he decision whether to grant a request for a change of counsel is a matter vested within the sound discretion of the [lower] court. Our rules of criminal procedure provide that a motion for change of counsel by a defendant to whom counsel has been assigned shall not be granted except for substantial reasons." *Commonwealth v. Basemore,* 525 Pa. 512, 522, 582 A.2d 861, 865 (1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 1191, 117 L.Ed.2d 432 (1992) (citations and quotation marks omitted). We will consider appellant's request for the appointment of new counsel with these principles in mind.

■ Appellant first suggests that the brief is defective because counsel has designated this as an appeal from the November 17, 1992 order of the lower court. Appellant has correctly noted that this appeal is from the order of October 2, 1991 rather than the November order. Contrary to appellant's claims, however, this minor defect does not render the counselled brief inoperative. As demonstrated by the argument set forth in the brief, counsel is aware of the fact that the focus of this appeal is the PCRA hearing conducted in the lower court and his inclusion of the wrong order appears to have been the result of an inadvertent mistake rather than a fundamental misconception of the nature of the appeal. Moreover, counsel's error does not affect either the merits of the appeal or our ability to engage in effective and meaningful

review. Appellant also has not been prejudiced by counsel's mistake. Counsel's mischaracterization of the order from which the appeal was taken thus does not necessitate any grant of relief.

■ Appellant also disagrees with counsel regarding the issues to be reviewed. Specifically, appellant contends that the question raised by counsel is moot as it was previously addressed by this court in our order entered on December 18, 1992. Appellant thus believes that counsel should have raised issues pertaining to the PCRA court's findings.

Notwithstanding appellant's contrary interpretation, our order of December 18, 1992 did not definitively resolve the question of whether the trial court erred in depriving appellant of his right to counsel during the PCRA hearing. If our order had disposed of this matter as appellant suggests, no appeal would be before us. A conclusion that appellant was deprived of his right to counsel at the PCRA hearing would have required this court to vacate the PCRA court's order and remand the matter for a new hearing. However, our order did not so provide. Rather, a review of the order demonstrates that we merely appointed new counsel to ensure that appellant's rights were protected at the appellate level, and to give this court the benefit of counsel's legal expertise in framing and discussing the allegations of error. Consequently, the order of December 18 does not render moot the issue now raised by counsel on appellant's behalf and the brief cannot be deemed defective on this basis.

Appellant's *pro se* arguments do not support the conclusion that appellate counsel has misperceived the scope of this appeal or that the counselled brief filed is so defective as to require the appointment of new counsel. Appellant has failed to persuade us that irreconcilable differences exist between himself and present counsel, nor has he demonstrated any other substantial reason why new counsel should be appointed. We therefore deny his *pro se* application for relief.

■■■■ We now turn to the merits of this appeal.[9] As indicated above, the question which we must address is whether appellant validly waived his right to be represented by counsel at the PCRA hearing. In support of his position, appellant argues that his waiver of counsel was not knowing, intelligent or voluntary because the PCRA court failed to conduct a detailed colloquy pursuant to Pa.R.Crim.P., Rule 318(c), 42 Pa.C.S.A. and the Note thereto.

As acknowledged by our Supreme Court, "it is, of course, firmly established that an accused has a constitutional right to representation by counsel during trial." *Commonwealth v. Monica*, 528 Pa. 266, 273, 597 A.2d 600, 603 (1991). The right to counsel has been further extended to post-conviction proceedings. *See* Pa.R.Crim.P., Rule 1504(a) and (c), 42 Pa. C.S.A. and the Note thereto (mandating the appointment of counsel to represent the defendant on his or her first motion for post-conviction collateral relief or whenever the interests of justice require it). However, a criminal defendant also has the right to self-representation which may be exercised under specific conditions. Pa.R.Crim.P., Rule 318(a), 42 Pa.C.S.A. and *Commonwealth v. Ellis*, —— Pa. ——, ——, 626 A.2d 1137, 1138 (1993) (citations omitted). While a defendant may waive his right to counsel,

> such a waiver must be the free and unconstrained choice of its maker, and also must be made knowingly and intelligently. To be a knowing and intelligent waiver[,] the defendant must be aware of both the right and of the risks of forfeiting that right. Furthermore, the presumption must always be against the waiver of a constitutional right. Nor can waiver

---

**9.** We shall only consider the issue presented in appellant's brief. Although appellant indicated in his petition that other unspecified issues regarding the PCRA court's findings should be considered in this appeal, we are not required to consider the merits of such claims. *See Commonwealth v. Ellis*, —— Pa. ——, —— and ——, 626 A.2d 1137, 1139 and 1141 (1993) (providing that there is no constitutional right to hybrid representation either at trial or on appeal and that the appellate courts are not required to consider *pro se* filings or briefs where a defendant is represented by counsel on appeal). Even were we to attempt to consider these issues, a review of the certified record discloses that appellant has not established any of the elements enumerated in 42 Pa.C.S.A. § 9543(a)(2).

be presumed where the record is silent. The record must show, or there must be an allegation and evidence which show, that [a defendant] was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver....

[T]he procedure to be followed when a defendant seeks to waive his right to counsel is provided in Pa.R.Crim. 318(c).... Therefore, a trial judge must thoroughly inquire on the record into [a defendant]'s appreciation of the right to effective assistance of counsel and to represent oneself at trial, at guilty plea hearings, at sentencing and at every critical stage of a criminal proceeding.

*Commonwealth v. Monica*, 528 Pa. at 273–274, 597 A.2d at 603 (citations and quotation marks omitted). *Accord Commonwealth v. Smith*, 426 Pa.Super. 144, 146–148, 626 A.2d 614, 616–617 (1993). We will evaluate the validity of appellant's waiver in accordance with these principles.

▮▮▮▮ Appellant argues that the PCRA court erred in failing to conduct the detailed waiver inquiry set forth in Rule 318. However, Rule 318 was designed to apply to trial proceedings rather than post-conviction hearings. In reviewing the questions contained in the Comment to Rule 318, it is apparent that some of the questions are irrelevant when viewed in the context of a post-conviction proceeding. For example, a defendant need not be apprised of the charges against him, the elements of each offense, and the permissible sentencing ranges or fines since, having been convicted, the defendant is presumably aware of both the offenses and any sentence or fine imposed therefor. We therefore conclude that inquiry into all of the areas set forth in the Comment to Rule 318 need not be conducted for a waiver of the right to counsel in a PCRA proceeding to be deemed valid. Nonetheless, the defendant must be apprised of his right to counsel and of the risks of forfeiting that right. *See Commonwealth v. Monica, supra.* Such inquiry would necessarily include a discussion of whether the defendant understands: (1) his right to be represented by counsel; (2) that if he waives this right, he will still be bound by all normal procedural rules; and (3)

that many rights and potential claims may be permanently lost if not timely asserted. *See* Comment to Rule 318.

In this case, the PCRA court was aware that appellant was dissatisfied with counsel's representation and explicitly explained the consequences of his actions to appellant. Before the hearing commenced, the following discussion took place:

By virtue of correspondence that I was made privy to or actually was addressed to me, I was advised at various times that Mr. Meehan didn't want Mr. Huganir and I think that I probably should address that question first. So, Mr. Meehan, let me address this to you. Let me explain to you how it is going to be. Mr. Huganir was appointed by me because I have known him for eighteen years and I know him to be an experienced criminal defense attorney and a member of this bar. He is qualified. There is no question in my mind about that.

If you want him to represent you, he will represent you today because I have appointed him and that is his job. If you don't want him to represent you, that is your choice, too, but you need to know this. If you discharge him, you are on your own. You can't discharge him and say keep appointing somebody until I find somebody I like. Do you understand that?

DEFENDANT MEEHAN: Yes, sir.

THE COURT: So what do you want to do? Do you want Mr. Huganir to represent you today or do you wish to go on your own?

DEFENDANT MEEHAN: No, I'd like Mr. Huganir to represent me.

N.T. (PCRA Hearing), 9/30/91 at 4–5. The hearing then proceeded with counsel attempting to represent appellant, despite appellant's *pro se* interventions.[10] During the exami-

10. During the initial discussion with the court, counsel indicated that appellant had drafted a supplemental PCRA petition which counsel had only signed at appellant's direction. P.C.H.T. 9/30/91 at 5. Counsel further explained that because he had not been consulted with respect to the supplemental petition, he was not ready to proceed on the issues raised therein, and that he was only prepared to present evidence

nation of Mr. Vagnozzi, counsel informed the court that appellant wanted to complete the questioning and the following discussion took place:

MR. HUGANIR: My client says that he has to go to the bathroom to relieve himself.

THE COURT: All right.

MR. HUGANIR: And that it appears that he is in a position now to relieve me and that he will pursue further questioning of Mr. Vagnozzi.

THE COURT: Mr. Meehan, what are we doing here?

DEFENDANT MEEHAN: Your Honor, you know, I don't mean to take up the Court's time like this. You know, as I explained to Mr. Vagnozzi the last time he was up to see me, he had said to me—

THE COURT: Let's not talk about what you are going to ask him. Are you discharging Mr. Huganir?

DEFENDANT MEEHAN: Your Honor, he's not even prepared. He's never seen this amended petition he's claiming. I have all this evidence to introduce as evidence. He hasn't seen any of it. If anything, I'd ask for a postponement. No, I don't want to relinquish counsel, but then again you can see apparent from his actions here, that—I mean, there's no sense of order here. There's no direction that we're following. We seem to be wandering off and wasting the Court's time and my time. That's not what I wish, no. I don't want to relinquish counsel, but I can do a hell of a lot better job here. I think I know—I'm in the best position to know what happened in this case.

THE COURT: You get a choice. Either Mr. Huganir represents you or you represent yourself. Those are the two options.

relating to appellant's Rule 1100 claim. *Id.* at 5 and 10. Counsel also repeatedly stated that he could not control appellant and that appellant wanted to introduce certain evidence in support of the allegations raised in the supplemental petition. *Id.* at 21, 41–42 and 48. Appellant even objected to answers by Mr. Vagnozzi although he was represented by counsel at the time. *Id.* at 55. The record thus demonstrates that appellant, rather than counsel, was in control of the proceedings.

DEFENDANT MEEHAN: I will represent myself, Your Honor.

THE COURT: You understand you can't change your mind now?

DEFENDANT MEEHAN: I understand that.

THE COURT: I am not going to appoint anybody else.

DEFENDANT MEEHAN: I understand that, Your Honor. Could I have co[-]counsel with Mr. Huganir as co[-]counsel?

THE COURT: No. He's either the counsel or he ain't the counsel.

DEFENDANT MEEHAN: That's fine. He's released.

*Id.* at 60–62.

Although the PCRA court did not phrase its inquiry in the precise terms set forth in the Comment to Rule 318, the court's entire discussion demonstrates that appellant was adequately apprised of his right to counsel and of the consequences which would follow in the event that he elected to represent himself. Despite this knowledge, appellant advised the court that he could do a better job than counsel and that he would rather represent himself than continue with Mr. Huganir. Under these circumstances, we find appellant's waiver to have been knowing, intelligent and voluntary.

Even were we to conclude that a violation of Rule 318 occurred, relief is warranted only if appellant suffers actual prejudice as a result thereof. *Commonwealth v. Bastone,* 321 Pa.Super. 232, 236, 467 A.2d 1339, 1341 (1983); *Commonwealth v. Davis,* 393 Pa.Super. 88, 101–102 n. 7, 573 A.2d 1101, 1107–1108 n. 7 (1990), *allocatur denied,* 527 Pa. 597, 589 A.2d 688 (1991). Appellant does not explain the manner in which he was prejudiced by any defect in the waiver colloquy. Nor does he argue that he would not have waived his right to counsel if more specific inquiry had been made into the relevant areas enumerated in the Comment to Rule 318. Our own review of the record similarly discloses no prejudice to appellant.

Order affirmed. *Pro se* Application for Relief denied.

ROWLEY, P.J., concurs in the result.